UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

J.P.E.H., by his parent and
next friend, Elizabeth Campbell[1]


        v.                              Civil No. 07-cv-276-SM


Hooksett School District, et al.

REPORT AND RECOMMENDATION


        Before the Court is Elizabeth Campbell's complaint (document

no. 1)[2], seeking relief for alleged violations of the Individuals

---

[1]Both the First Circuit and the Supreme Court have been
presented with the issue of whether pro se parents can represent
their minor children in IDEA proceedings, but neither court has
definitively resolved the issue.  See Winkelman v. Parma City
Sch. Dist., ___ U.S. ___, 127 S. Ct. 1994 (2007); Maroni v. Pemi-
Baker Reg'l Sch. Dist., 346 F.3d 247 (1st Cir. 2003).  The
Supreme Court did make clear, however, that the rights and
interests of parents and their children under the IDEA are co-
extensive.  See Winkelman, 127 S.Ct. at 2004 ("IDEA does not
differentiate . . . between the rights accorded to children and
the rights accorded to parents.").  Consequently, even if
Campbell cannot, strictly speaking, represent her minor son in
pursuing his IDEA claims against the School District, she may
pursue her own identical claims in her own right.  Accordingly,
to the extent that Campbell's complaint raises IDEA claims, I
find that Campbell is proceeding on her own behalf and pursuing
her own co-extensive rights under that statute.

[2]Another case filed by Campbell, Campbell v. Hooksett Sch.
Dist., No. 07-cv-275-PB, is currently awaiting preliminary
review.  A motion to consolidate the two matters has been filed.

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et

seq., Section 504 of the Rehabilitation Act of 1973

("Rehabilitation Act"), 29 U.S.C. § 701, et seq., the Family

Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. §

1232g, the United States Constitution, and State law.  Because

Campbell is proceeding pro se and in forma pauperis, the matter

is before me for preliminary review to determine, among other

things, whether or not she has stated any claim upon which relief

might be granted.  See United States District Court for the

District of New Hampshire Local Rule ("LR") 4.3(d)(1).

For the reasons discussed herein, I direct, in an Order

issued simultaneously with this Report and Recommendation

(hereinafter, the "Simultaneous Order"), that the IDEA claims,

the claims based on the New Hampshire Special Education law

arising out of the same facts as the IDEA claims, and the

Rehabilitation Act claims be served on the defendants.[3]  I also

---

[3]In addition to the Hooksett School District ("HSD"),
Campbell has named the following individual HSD and New Hamsphire
Department of Education ("DOE") employees as defendants to this
action: Hooksett Memorial School Principal Carol Soucy, DOE
Investigator Joanne Esau, HSD speech therapist and case manager
Jacqueline Perra, HSD speech therapist Janet Butler, HSD attorney
Jeanne Kincaid, HSD Special Education Director Marjorie Polak,
DOE Hearing Officer Peter Foley, DOE licensing and credentialing
officer Judith Fillion, Assistant to the DOE Commissioner Sarah
Browning, and DOE employee Mary Heath.  It also appears, based on

recommend the dismissal of the constitutional claims, the FERPA claim, and all of the claims seeking money damages.

Standard of Review

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(1)(B).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may

---

the allegations contained in the narrative of the complaint, that Campbell intended to name HSD Superintendent Charles Littlefield as a defendant to this action, although he is not listed in the caption of the complaint, and I will consider Littlefield to have been named by Campbell as a defendant to this action.  As Campbell has alleged the minimum facts necessary to claim that each defendant was responsible either for specific acts or systemic issues, I will consider, for purposes of preliminary review only, that each of the defendants listed here is properly named in this action.

3

construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).  All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>id.</u> This review ensures that pro se pleadings are given fair and meaningful consideration.

<u>Background</u>[4]

Elizabeth Campbell has an eleven-year old son, J.P.E.H., who she alleges is educationally disabled by virtue of his diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"), speech delay, and auditory processing difficulties which affect his ability to comprehend and retain information.  From 2003 through the spring of 2007, J.P.E.H. attended school in the HSD.  In October of 2003, Campbell referred J.P.E.H. to the Special Education Department of the HSD for evaluation.  Three months

---

[4]Campbell's complaint does not consistently and clearly describe the chronology or details of events relevant to this action, and the specific actions taken by the people involved in those events.  I have generously construed the allegations in the complaint in an effort to set forth the factual assertions relevant to Campbell's claims.  Should Campbell disagree with the representation of the facts contained herein, she must do so by properly objecting to this Report and Recommendation or by moving to amend her complaint.

later, school officials identified J.P.E.H. as needing special education services, and put together an Individualized Education Plan ("IEP") for him.  Certain assessment tests were conducted to formulate the IEP, which demonstrated that J.P.E.H. would need speech therapy as well as other accommodations for his diagnosis of ADHD.  Speech therapy began in March of 2004.

The IEP further provided that the classroom teachers and specialists would provide Campbell, in writing, with information and concepts, topics for discussion and instruction, key vocabulary, and copies of reading selections in the areas of science, social studies and health.  This information was to be provided to Campbell in advance of, or contemporaneously with, the instruction given to J.P.E.H. in order that Campbell could assist J.P.E.H. at home with his studies, a necessary element of overcoming his educational disabilities.  Campbell refers to this information as a "syllabus," although she claims the defendants have been reluctant to use that term.  Campbell was also to receive similar documents from the speech therapists working with J.P.E.H. so that she might also support that therapy at home. Campbell alleges that the provisions of the IEP regarding the syllabus, if implemented, would suffice to allow Campbell to meet

J.P.E.H.'s educational need for support for his academic program
and speech therapy at home.

From the time the IEP was formulated until November 29,
2006, Campbell alleges that school officials, including
administrators, teachers, specialists and service providers,
failed to provide her with any syllabus.[5]  She asserts that it
was impossible, therefore, for her to help her son.  In addition,
the defendants' failure to provide Campbell with a syllabus
resulted in J.P.E.H. having inadequate time to prepare
assignments and study for tests, which further negatively
impacted his educational progress.  Campbell alleges that this
failure to provider her a syllabus denied J.P.E.H. an appropriate
education until November 30, 2006, when Campbell began to receive
"week-at-a-glance" sheets from J.P.E.H.'s teachers which
contained the information required by the IEP.  Campbell states
that at some point, she stopped receiving the written information
regarding J.P.E.H.'s speech therapy sessions she had been
getting.

---

[5]Campbell has a number of theories as to why she was denied
this information.  Primarily, Campbell seems to attribute this
denial to a dislike for Campbell herself, based on her
communication style, her race (Campbell is African-American), and
her political conservatism.

Between January of 2004 and November of 2006, Campbell became angry at not being provided with written information as required by the IEP.  Campbell expressed her anger by refusing to go to the school or meet with the teachers.  Further, Campbell sent a number of emails to the school officials criticizing their liberalism and the public school system in general.  Campbell has attached copies of several of those emails to her pleadings.

Campbell alleges that she complained to the school and attempted to resolve the issues surrounding the failure to implement J.P.E.H.'s IEP directly with school officials, primarily by email but also in person and by phone.  Campbell asserts that she was falsely accused of threatening HSD officials, and was not allowed to communicate with the school officials for a period of time, a directive initiated and enforced by Linda Warhall, a Hooksett Police officer who worked as the "resource officer" at J.P.E.H.'s school.

The school district scheduled a meeting for November 29, 2006 with the intention to "deidentify" J.P.E.H. as a child in need of special education.  According to Campbell's complaint, if deidentified, J.P.E.H. would no longer be entitled to receive free speech therapy, as that service was considered by the school

district to be a related service designed to support special education students, but not available to students who could receive a free and adequate education without special education placement.  Campbell believes that deidentification was inappropriate, citing J.P.E.H.'s continuing difficulties with the same issues that had caused him to be identified as educationally disabled in 2004.

At the time the meeting was scheduled, the school did not have a current phone number for Campbell,[6] and, therefore, attempted to notify her of the November 29 meeting by sending a certified letter to her home address.  The letter, which Campbell asserts was not mailed in time to give her the statutorily required fourteen days notice prior to the meeting, was not picked up or signed for.  Campbell states that no other efforts were made to notify her of the meeting, either by sending a letter home with her son, sending her an email, or contacting her attorney, who HSD officials knew to be representing Campbell in matters related to J.P.E.H.'s education, and for whom she had

---

[6]Prior to November of 2006, a school official provided J.P.E.H.'s bus driver with Campbell's unlisted phone number in a non-emergency situation.  As a result, Campbell changed her phone number and did not provide her new phone number to school officials.

signed an authorization for release of J.P.E.H.'s school information.  The school was aware that Campbell had not received the letter, but proceeded with the meeting without her, her attorney, J.P.E.H., or anyone advocating on J.P.E.H.'s behalf, such as an appointed surrogate.  J.P.E.H. was deidentified as a special education eligible child at the meeting.  Campbell now objects to the deidentification, having been denied the ability to participate in the meeting, and failing to assign a surrogate advocate for J.P.E.H. for the meeting.

On December 11, 2006 and January 2, 2007, Campbell filed a complaint with the DOE citing the following concerns: (1) the HSD's denial of Campbell's request for testing for J.P.E.H., (2) a failure to timely provide Campbell's counsel with J.P.E.H.'s educational records, (3) insufficient notice for the November 29, 2006 meeting, (3) failing to include Campbell in the November 29, 2006 meeting, and (4) failure to provide J.P.E.H. with any advocate prior to deciding to deidentify him as a child in need of special education and related services.  Campbell requested: (1) independent evaluations of J.P.E.H. to address all areas of his educational performance, language comprehension, auditory processing, and ADHD issues, (2) continuation of special

education services until the completion of the evaluation, (3) the development of a "504 plan" to implement accommodations for J.P.E.H. in the event that the HSD's deidentification was affirmed, (4) the provision of syllabi and textbooks for every class to Campbell, (5) permission for Campbell to be on school grounds and to communicate with the school via email, phone, fax, and mail, to allow her to advocate for and assist J.P.E.H., and (6) reasonable attorney's fees.

On January 9, 2007, the HSD filed a complaint with the DOE seeking an order affirming the November 29, 2006 determination that J.P.E.H. should be deidentified.  Campbell, through counsel, responded to that complaint, asserting a number of the issues raised in her complaint to the DOE, and raising the following additional issues for the DOE's consideration: (1) J.P.E.H. should not be deidentified or determined to be ineligible for special education and related services, (2) Campbell was inappropriately banned from contacting the HSD in person, or by phone, email, fax or mail, as she never threatened anyone there, and that the contact prohibition has negatively impacted her ability to advocate for J.P.E.H., (3) the school personnel have consistently refused to send Campbell effective syllabi for

either academic subjects or speech therapy so that Campbell could assist J.P.E.H. at home, (4) the IEP goals and some of the objectives of the IEP formulated for J.P.E.H. were inadequate as they were not measurable, (5) the IEP was not implemented effectively until November 30, 2006, because of the failure of the HSD personnel to provide syllabi, (6) the IEP does not contain any method by which to measure improvement, and therefore, the HSD's contention that J.P.E.H. was improving was flawed, (7) the testing and evaluations proposed by the HSD was inadequate,[7] and (8) the testing that was performed on J.P.E.H. was flawed and unreliable.

During the pendency of Campbell's complaints to the DOE, Campbell says that a DOE investigator, Joanne Esau, was assigned to the matter.  Campbell claims that Esau failed to conduct objective fact-finding, but instead set out from the inception of the investigation to prove that Campbell was at fault for all of the problems with J.P.E.H.'s school experience.  In particular, Campbell claims that Esau never met with her to discuss either

---

[7]At that time, the school district agreed to have the testing performed voluntarily, but only if Campbell withdrew her complaint.

the facts or her allegations.  Campbell attributes Esau's bias to Campbell's conservative political views.

A prehearing conference was held on February 2, 2007, where Campbell was represented by counsel; however Campbell's attorney withdrew from the case on February 17, 2007.  To allow Campbell to find new counsel, the due process hearing on Campbell's complaint and the DOE's complaint was scheduled for April 19, 2007.  Campbell appeared pro se at that hearing.  Campbell alleges that she was denied an impartial hearing, because the hearing officer, defendant Foley, allowed the Hooksett prosecutor and an armed Hooksett police officer to be in an adjacent room during the hearing, which enabled them to confer with the school district's attorney during breaks.

Campbell also alleges that her right to an impartial hearing officer was violated because Foley sent pornographic emails to her.  Campbell claims that she reported this to the Assistant Commissioner of Education, and was told that it was likely a virus and not an email sent directly from Foley.  Campbell contacted the Federal Bureau of Investigations, which referred the matter to the Hooksett Police Department.  Campbell alleges

that she refused police help at that point due to her lack of trust in the Hooksett police.

On May 11, 2007, Foley issued a decision in favor of the HSD, finding that Campbell's claims were unsubstantiated. Campbell challenges a number of procedural aspects of the hearing, as well as substantive issues with Foley's report. Specifically, Campbell points to Foley's finding that J.P.E.H. made progress in school without any specially designed instruction.  She alleges that, in fact, J.P.E.H.'s most relevant scores remained the same during J.P.E.H.'s school career, until teachers were pressured by the HSD administration to give him higher scores, even though his work had not improved.

In July of 2007, after J.P.E.H. was deidentified, Campbell received a letter from a school official, Marjorie Polak, discussing an alternative educational plan for J.P.E.H. and inviting Campbell to a meeting to discuss those matters.  The letter identified J.P.E.H. as having been diagnosed with ADHD and as having formerly been enrolled in the special education program.  A copy of this letter was sent to Officer Warhall. When Campbell complained that private information had been inappropriately forwarded to Warhall, Polak told Campbell the

13

letter was sent to Warhall so that she would know that Campbell
had been invited to meet with school officials and that Campbell,
therefore, was not breaching any "no contact" directive by
meeting with school officials.  The school principal told
Campbell that Warhall, as the resource officer, was considered a
school official with a right of access to J.P.E.H.'s educational
records.  Campbell claims that the release of this information to
Warhall violated J.P.E.H.'s privacy rights in his educational
records.  Campbell also believes that Warhall improperly used the
private information to pursue a false petition in court, alleging
that J.P.E.H. had been abused and/or neglected by Campbell, and
that the improper release of J.P.E.H.'s private educational
records could subject him to gossip and stigmatization.

Discussion

I.    IDEA and Related State Law Claims

Campbell has raised a number of claims based on alleged
violations of the IDEA that resulted in a deprivation of a free
and adequate public education for J.P.E.H.  Campbell claims that
defendants violated her rights under the IDEA by failing to
provide her son with an appropriate IEP to address his
educational disabilities, by failing to properly execute the IEP

in place, by failing to provide her with an impartial due process hearing, by refusing to provide J.P.E.H. with an outside evaluation, and by failing to provide her with sufficient notice and opportunity to attend a hearing or otherwise provide J.P.E.H. with an advocate prior to finding him ineligible for special education services.

The IDEA is a federal law which conditions a state's eligibility to receive federal funds for education upon the state's adoption of laws and regulations that make a "free appropriate public education" ("FAPE") available to all of the state's disabled children.  20 U.S.C. § 1412(a)(1).  The IDEA defines a FAPE as "special education and related services that – (a) have been provided at public expense, under public supervision and direction and without charge; (b) meet the standards of the State educational agency; (c) include an appropriate preschool, elementary or secondary school education . . . and (d) are provided in conformity with the individualized education program required under Section 1414(d) of this title."  20 U.S.C. § 1401(8).  "Special Education" is instruction specially designed to "meet the unique needs of the child," 20 U.S.C. § 1401(25), and "related services" includes transportation

and other supportive services that may be required to assist the child in deriving benefit from special education services.  20 U.S.C. § 1401(22).

The parents of a disabled student are entitled to an "impartial due process hearing" to challenge a local school district's compliance with the IDEA's requirement that a FAPE be provided to the student.  20 U.S.C. § 1415(f); 34 C.F.R. § 300.507.  The right to a due process hearing includes the rights to (1) have an attorney attend the hearing; (2) present evidence and cross-examine witnesses; (3) require the local school district to disclose expert evaluations; (4) require the state to produce a written or electronic verbatim record of the hearing; and (5) require the hearing officer to produce a written or electronic decision that includes findings of fact.  See 20 U.S.C. § 1415(f)(2) & (h).  The IDEA is administered by local school districts applying relevant state and federal procedures and regulations.  See 34 C.F.R. § 300.2.  Campbell claims that a number of these procedures and regulations have been violated, resulting in the deprivation of J.P.E.H.'s IDEA-protected right to a FAPE.

16

New Hampshire implements the IDEA through its Special Education Law.  N.H. Rev. Stat. Ann. ("RSA") § 186-C.  The Special Education Law requires local school districts to develop an IEP for every disabled student residing in the district.  An IEP is identified in the Special Education Law as "a written plan for the education of an educationally disabled child that has been developed by a school district in accordance with rules adopted by the State board of education and that provides necessary special education or special education and educationally related services within an improved program."  RSA § 186-C:2-III.[8]  The Special Education law also provides that every disabled student "shall be entitled to attend an approved program which can implement the child's individualized education plan."  RSA § 186-C:9.  An "approved program" is "a program of special education that has been approved by the state board of education and that is monitored by a school district . . . for the benefit of educationally disabled children . . .."  RSA § 186-C:2-II.  The parents of a disabled student are entitled "to

---

[8]The IDEA adopts a somewhat different definition of an IEP. See 20 U.S.C. §§ 1401(12) & 1436.  The difference is immaterial at this stage of the proceedings.

appeal decisions of the school district regarding such child's individualized education plan."  RSA § 186-C:7 II.

The IDEA is administered by local school districts applying relevant state and federal regulations.  Campbell alleges that the defendants have violated a number of those regulations, and in that way have denied her son a FAPE.[9]  I find that Campbell

---

[9]While Campbell has not cited all of the relevant regulations in support of her claims, the facts alleged show possible violations of a number of regulations, including: 34 C.F.R. § 300.101(a) (requiring a "free appropriate public education" for all children, including those with disabilities); 34 C.F.R. § 300.107 (requiring school districts to provide special education students with nonacademic services to support implementation of an IEP); 34 C.F.R. § 300.121 (mandating procedural safeguards to protect the rights of parents and children under the IDEA); 34 C.F.R. § 300.123 (requiring procedures to maintain confidentiality of any personally identifiable information); 34 C.F.R. § 300.300 (generally requiring informed parental consent for evaluations of children, conducted to determine eligibility for special education services); 34 C.F.R. § 300.301 (requiring initial evaluation to occur within sixty days of referral by parent or school); 34 C.F.R. §§ 300.304– 300.306 (providing procedures and requirements for conducting evaluations of children and determining eligibility for special education services); 34 C.F.R. §§ 300.320 – 300.324 (defining an IEP, setting out required contents of IEP, identifying rights and responsibilities of all parties, including school, special education providers and parents, in creation of IEP, and describing procedures for developing, reviewing, and revising IEPs); 34 C.F.R. § 300.502 (establishing rights of parents to obtain independent evaluations of child); 34 C.F.R. § 300.504 (establishing procedural safeguards for parents and children), and; 34 C.F.R. §§ 300.511 – 300.519 (establishing procedures for conducting a due process hearing upon the filing of a due process complaint and explaining procedure for resolving complaints through hearing and appeal).

has stated the minimum facts necessary to state a claim upon which relief might be granted that her rights under the IDEA have been violated by alleging violations of regulations that resulted in a denial of her rights under the IDEA. Accordingly, in my Simultaneous Order, I will direct that the IDEA claims, and the State law claims arising out of the same allegations, be served on defendants.

II.  Non-IDEA Claims

A.  Constitutional Claims Raised Under 42 U.S.C. § 1983

Campbell alleges that the defendants' actions, in addition to violating the IDEA, violate her son's rights under the United States Constitution. Accordingly, she attempts to bring claims pursuant to 42 U.S.C. § 1983, on behalf of her son, alleging that his rights were violated by denials of due process and equal protection. Unlike the IDEA, however, § 1983 does not provide that the parent of a minor child has rights that are co-extensive with the rights of the child that may be redressed by a claim or a cause of action under that statute. Accordingly, Campbell cannot maintain a § 1983 action on her own behalf, because she has not alleged violations of her own independent rights under the Constitution.

As to the rights Campbell asserts on her son's behalf, parties to a federal lawsuit cannot be represented by anyone other than themselves or a member of the bar.  <u>See</u> 28 U.S.C. § 1654; <u>see</u> <u>also</u> LR 83.2(d) ("Persons who are not members of the bar . . . will be allowed to appear before this court only on their own behalf") and LR 83.6(b) ("Pro se parties must appear personally . . . . A <i>pro se</i> party may not authorize another person who is not a member of the bar of this court to appear on his or her behalf.").  For that reason, Campbell, proceeding pro se, and not as a member of the bar of this Court, cannot represent her son in the asserted § 1983 claims.  Because Campbell is the only plaintiff properly before the Court, I recommend dismissal of the § 1983 claims and any additional statutory non-IDEA claims raised by Campbell on behalf of her minor son asserting violations of her son's rights.

B.   <u>Rehabilitation Act Claim</u>

Like the IDEA, section 504 of the Rehabilitation Act requires that states provide disabled students with a FAPE.  <u>See</u> <u>Burke v. Brookline Sch. Dist.</u>, Civ. No. 06-cv-317-JD (D.N.H. 2007) (citing <u>Mo. Dep't of Elementary & Secondary Educ. v. Springfield R-12</u>, 358 F.3d 992, 998-99 (8th Cir. 2004)).  The

Rehabilitation Act requires the same standards and procedures for ensuring a FAPE that are required under the IDEA. Accordingly, I will not undertake a separate analysis under the Rehabilitation Act, but will, instead, apply the findings made regarding the IDEA claims and apply them to the Rehabilitation Act claims. I, therefore, will direct, in my Simultaneous Order, that the Rehabilitation Act claim be served on defendants.

    C.   <u>FERPA Claim</u>

The FERPA conditions receipt of federal funds to educational institutions on its restricting the release of educational records to certain authorized people. <u>See</u> 20 U.S.C. § 1232g(b)(1). FERPA does not provide either a private cause of action or rights that are actionable under § 1983. <u>See</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 276, 280 (2002). Accordingly, to the extent that Campbell alleges claims under the FERPA, I recommend that these claims be dismissed.

    III.   <u>Damages Claims</u>

Money damages of any sort are not available in a private suit, such as this one, under the IDEA. <u>Diaz-Fonseca v. Puerto Rico</u>, 451 F.3d 13, 28 (1st Cir. 2006) (finding under <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 124 (1st Cir. 2003) that

the only monetary awards available under the IDEA are awards of compensatory education and equitable remedies that involve the payment of money).  Additionally, to the extent that Campbell seeks to obtain a damages remedy for the violation of her son's IDEA rights by recasting them as § 1983 claims, she cannot succeed.  See Diaz-Fonseca, 451 F.3d at 28 ("[Section] 1983 cannot be used to escape the strictures on damages under the IDEA . . . where the § 1983 claim is premised on a right created by the IDEA.").  I recommend, therefore, that all of Campbell's claims seeking monetary damages be dismissed.

Motion for Preliminary Injunctive Relief

Campbell has filed a motion seeking preliminary and permanent injunctive relief.  Campbell alleges that as a result of the instant lawsuit and of her persistent and vocal complaints regarding the defendants, that defendants have inappropriately exerted influence that resulted in her being fired from several positions as a nurse, and in J.P.E.H.'s expulsion from a private school where Campbell had enrolled him for the 2007–2008 school year.  While the motion discusses a number of claims, some directly arising from the allegations in her initial complaint, and some raised for the first time in her motion, she seeks only

one monetary relief.  Specifically, Campbell seeks this Court's order directing the defendants to pay J.P.E.H.'s private school tuition, as well as Campbell's personal bills.

Preliminary injunctive relief, such as that requested here, is available to protect the movant from irreparable harm, so that a meaningful resolution of the dispute may be obtained after full adjudication of the matter.  Such a situation arises when some harm from the challenged conduct could not be adequately redressed with traditional legal or equitable remedies following a trial.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3rd Cir. 1994) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").  Absent irreparable harm, there is no need for a preliminary injunction.

Here, Campbell has sought only tuition payments for her son's education, and payment of her bills, so that she might support her son in his educational endeavors.  Campbell is only seeking payment of costs she will incur prior to a full adjudication of this matter.  She has not alleged that defendants would be unable to satisfy a judgment won after trial, and she has not sought any equitable or non-financial injunctive relief.  Accordingly, I find that Campbell's request is insufficient to allege the possibility of irreparable harm in the absence of the injunctive relief requested, and I recommend that the motion be denied.

<u>Conclusion</u>

For the foregoing reasons, I recommend that the § 1983 claims alleging constitutional violations and the FERPA claim be dismissed from this action, and that the motion seeking preliminary injunctive relief (document no. 4) be denied.  In my Simultaneous Order, I will direct that the IDEA claims, Rehabilitation Act claims, and the pendant State law claims be served on the defendants.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to

file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:      December 18, 2007

cc:        Elizabeth Campbell, pro se